☐ FILED   ☒ LODGED

**Dec 12 2019**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

John Wheeler #049345
Name and Prisoner/Booking Number

ADOC Lewis
Place of Confinement

P.O. Box 3500
Mailing Address

Buckeye, AZ 85326
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

John E. Wheeler,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Charles Ryan,
(Full Name of Defendant)

(2) David Shinn,

(3) Corizon Health Inc,

(4) Centurion Managed Care,

Defendant(s).

☒ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 19-CV-5452-ROS-DMF
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**
Jury Demand

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☒ Other: 42 USC 1219 ; ARS 12-561

2. Institution/city where violation occurred: ADOC, Douglas, Tucson, Buckeye

Revised 3/11/16                                1

**550/555**

5. Richard Pratt
6. Michael Miner
7. Carla Trousle
8. Bonnie Goodman
9. Daniel Ross
10. Theresa Lee
11. Joseph Zavallos
12. Kimberly Switzer
13. _____ Donello
14. John Doe No. No1: ADOC, Health Services Compliance Monitoring Bureau.
15. John Doe No. 2: ADOC, Corizon, Final Policy Makers.
16. John Doe No. 3: Corizon, Centurion, Reviewing Physicians.
17. John Doe No. 4: Corizon, Centurion Directors of Nursing, Supervisors.

Each Defendant is Sued in their Personal and Proffessional Capacities:

1-A

## B. DEFENDANTS

1. Name of first Defendant: __Charles Ryan__. The first Defendant is employed as: __Director Arizona Dept. of. Corrections__ at __ADOC__.
   (Position and Title)                                                                  (Institution)

2. Name of second Defendant: __David Shinn__. The second Defendant is employed as: as: __Director__ at __ADOC__.
   (Position and Title)                                                                  (Institution)

3. Name of third Defendant: __Corizon Health Ink__. The third Defendant is employed as: __Contracted Health Services Vendor__ at __ADOC__.
   (Position and Title)                                                                  (Institution)

4. Name of fourth Defendant: __Centurion Managed Care__. The fourth Defendant is employed as: __Contracted Health Services Vendor__ at __ADOC__.
   (Position and Title)                                                                  (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☒ Yes   ☐ No

2. If yes, how many lawsuits have you filed? __2__. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: __Wheeler__ v. __Brown__
      2. Court and case number: __Unknown__.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __Settled__.

   b. Second prior lawsuit:
      1. Parties: __Wheeler__ v. __Huerta__
      2. Court and case number: __Unknown__.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __Dismissed__.

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____.

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

5. Richard Pratt, interim Director Health Services at ADOC.
6. Michael Miner, Physician employed By Centuria
7. Carla Transue, Nurse employed By Corizon
8. Bonnie Goodwin, physician employed By Corizon
9. Daniel Ross, Physician Assistant, employed By Corizon
10. Theresa Lee, Nurse, employed By Corizon
11. Joseph Zevallos, Physician Assistant, employed By Corizon
12. Kimberly Switzer, Director of Nursing, employed By Corizon
13.     Donello, Provider,    employed By Centuria
14. John Doe No. 1: ADOC, Health Services Compliance Monitoring Bureau
15. John Doe No. 2: ADOC/Corizon, final Policy Makers
16. John Doe No. 3: Corizon/Centuria, Reviewing Physicians
17. John Doe No. 4: Corizon/Centuria Directors of Nursing

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: <u>Eighth Amendment</u>

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   See Supporting Facts: Pg 3-A, et seq.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   See Supporting Facts No 18, 22, 23, 25, 24, 21, 26, 27

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I? ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

Supporting Facts

1. Plaintiff an Inmate at ADOC, is Currently Serving a 13 year Prison Sentence Being Admitted into ADOC, Alhambra Reception Center where he was Diagnosed As Anti-HCV Positive on or About Oct. 2013. Pursuant to ARS 13-201.01, Duties of the Director, the Directors: Charles Ryan, David Shinn, and Interim Director of Health Services Richard Pratt, had a duty to Provide Adequate Health Care to the Plaintiff during his Incarceration.

2. ADOC has Privatized Health Services, through Health Services Vendors: Corizon March 4, 2013 through June 30, 2019, and Centurion as of July 1, 2019 through Date of filing this Complaint, and Thereafter.

3. Directors, Ryan, Shinn, and Pratt failed to Contract with Health Services Vendors Corizon, and Centurion for a Level of Services Sufficient to meet Constitutional Standards, including Understaffing of health Services Positions, Unconstitutional Procedures Regarding Treatment of Chronic HCV, and they failed to Audit Conditions within ADOC, or Monitor Contract Compliance with Health Services Vendors, such that Plaintiff was Denied Treatment of his Chronic HCV, until the Condition Progressed to Stage II Cirrhosis, and Resulting in Grossly Inadequate Medical Care to the Plaintiff during his Confinement in ADOC, as Set forth Below.

4. The Operating Model of Centurion, and Corizon, Prioritizes Cutting Costs over Delivering Adequate and timely Care, Resulting in Delay, Denial, and Interference of Providing Plaintiff Adequate Medical Care as Set forth Below.

5. On March 6, 2012 the ACLU Filed Suit Against ADOC, Parsons v. Ryan, Case No. CV-12-601-PHX-DJH, A Class Action of which Plaintiff is a Class Member. The Settlement Agreement (Doc. 1185), Required ADOC and it's Contracted

3-A

health Services Vendors to Comply with Over 100 health Care Performance Measures including Developing and Documenting Treatment Plans for Chronic Diseases, within 30 days of identification that the Inmate has a Chronic Disease. The Stipulation Became Effective Feb. 2, 2015. ADC's Health Services Compliance Monitoring Bureau, John Doe No. 1, failed to Adequately Monitor Contract Compliance with Contracted health Services Vendors. (Doc. 2900, 3089, 2898, 3235, 2904)

6. ADCC, Corizon, Final Policy Makers, John Doe No. 2, have Adopted, endorsed, and Promulgated Federal Bureau of Prisons Clinical Guidance (BOP Guidelines) to be utilized By Health Care Providers in the evaluation and Management of Chronic HCV, hepatitis C virus. BOP Guidance Prioritize Treatment of HCV Based on Severity of the Disease, a Policy Motivated on the efforts to Save Money, Rather than Medical Considerations, Resulting in the Delay, Denial, and Interference of Providing Plaintiff Treatment for Chronic HCV.

7. BOP Guidance Requires Providers to Evaluate Patients for other Causes of Liver Disease, Iron Overload, and to Perform laboratory Testing for Ferritin and Iron Saturation when Clinically Indicated. On or About Dec. 9, 2013 the Plaintiffs Serum Iron Level was 210 ng/mL with Normal Range 65-175 ug/dL, clinically Indicating Iron Overload. The two Key tests when Screening for Iron Overload are Transferrin Saturation and Serum Ferritin. Expert Guidance from the American Assoc. for the Study of Liver Diseases, (AASLD), recommends the following Cutoffs when Screening for Iron Overload: Transferrin Saturation greater than 45%, And a Serum Ferritin greater than 200 ng/mL. A definitive Diagnosis of hemochromatosis, Requires either A Liver Biopsy with Determination of iron Index, or A Specific Battery of Genetic Testing. Hemochromatosis Left untreated Can Cause Liver Damage....

and Cirrhosis, Pancreas Damage leading to Diabetes; Heart Failure; and Joint Pain. Plaintiffs iron was 210 ug/dL on December 9, 2013.

8. Provider-Defendant Carla Tomsue Advised Plaintiff that elevated iron was caused by Liver Disease HCV, and indicated on the HCV Checklist that Plaintiff did not have any Comorbid Medical Conditions, without Performing Diagnostic Laboratory Tests to Determine Etiology of Plaintiffs Iron Overload Condition. Diagnostic testing For Iron Overload was not conducted until Dec. 4, 2018, at which time Plaintiffs Lab Report Dated Dec. 19 2018 indicated: Ferritin, 483 ng/mL, and iron Saturation at 64%, clearly exceeding Cutoff Levels when Screening for Iron Overload. Reviewing Physician Dr. Michael Minar noted for Inmate Notice, "Results within Parameters; No Added Action". Plaintiff was Notified on Dec. 20, 2018 that he was Prediabetic By Provider Zevallos.

9. BOP Guidelines Require Health Care Providers to Calculate the AST to Platelet Ratio Index (APRI) to Assess the Degree of Liver Fibrosis, Noting APRI is a Less Expensive Means of Assessing Liver Fibrosis than a Liver Biopsy. APRI does not Accurately Differentiate Intermediate Fibrosis from Mild or Severe Fibrosis. Standards of Care Recommend Clinitians use APRI in Combination with other Markers of Liver Fibrosis to Evaluate and Stage Liver Fibrosis. Corizon Providers did not Perform other other Diagnostic Test Proceedures to Stage Plaintiffs Liver Fibrosis until Nov. 28, 2018 Fibrotest/Actitest indicating F4, Cirrhosis. BOP Guidance clearly indicates APRI does not Accurately Stage Liver Fibrosis. Noting that using a cutoff of 1.5, APRI can only Predict the Presence of Significant Fibrosis, Stages 2-4, out of 4 being Cirrhosis. The failure to Perform APRI in Combination with other Diagnostic tests, Resulted in

3-C

Inability to Accurately Differentiate Intermediate Fibrosis, from Mild or Severe Fibrosis. Plaintiff was Diagnosed with Cirrhosis on Nov. 28, 2018, when his APRI score was 0.884

10. BOP Guidelines Direct Providers to Calculate the APRI Score to Assess the Degree of Fibrosis. Defendant Transue Calculated Plaintiff's APRI Score on Dec. 9, 2013 as 2.04. BOP Guidance, directs Providers that An APRI Score $\geq 2.0$ may be used to predict the Presence of Cirrhosis, And Directs Providers to Refer the Inmate for Abdominal Ultra Sound to identify other findings Consistent with Cirrhosis. Provider Transue did not Refer Plaintiff for a Abdominal Ultra Sound, or if she did, the Request for Refferal was Denied By John Doe Defendant No. 3, or 4, who were Reviewing Physicians, the Utilization Management Team, or Supervisors.

11. BOP Guidelines Direct Providers to Determine BOP Criteria For Treatment. Provider Transue Determined that Plaintiff was Priority Level 1, High Priority for Treatment on Dec. 9, 2013, and Chose Peginterferon as the Treatment Regimen, Began Pretreatment Laboratory Tests, And Reffered Plaintiff for Mental Health Assessment on April 14, 2013.

12. On or About May 24, 2014 Provider Transue Advised Plaintiff that he No Longer met Treatment Criteria due to Lowered Liver Enzyme Levels Reducing his APRI Score in Pre treatment Laboratory Testing, And that he No Longer Qualified for Treatment and would be Monitored in Chronic Care, and his Condition was Not Serious. Plaintiff Requested Specific Information (a) What were treatment Criteria Requirements and, (b) What were the Specific Lab Test Results of which the Determination was made that he No Longer met

3 - D

priority Criteria for Treatment. Provider Transue Refused to Answer the Plaintiffs when Plaintiff stated he had a Right to Know his Medical Status. Provider Transue Called Corrections Officers to Remove Plaintiff from Medical, Requesting that Plaintiff Be issued Disciplinary Citation for Misconduct. During A Subsequent Encounter with Transue on Nov.20, 2014, Plaintiff Again Requested Specific Answers Regarding his Medical Status, after Transue Advised him he no Longer Qualified for Treatment, again Provider Transue Called Corrections Officers to Remove Plaintiff from Medical, Refusing to Answer Plaintiff's Questions Regarding his Medical Status. Each occassion Provider Transue Requested Discipline Action, the incident was Investigated, and no Discipline Action was Taken.

13. Provider Transue Calculated Plaintiffs APRI Score on November 20, 2014 as 1.56. The APRI Score was Noted on the HCV Check list. The Plaintiffs APRI score Continued to Lower in each Annual Chronic Care Lab, to 0.884 on or About November, 2018.

14. Plaintiffs Serum Iron Levels Continued to Rise in each Annual Chronic Care Lab Testing for Complete Blood Count. Standard Hepatitis lab tests do not include Screening for Iron Overload, ferritin and iron Saturation, unless Clinically Indicated and Specifically Requested By Providers. Although elevated Serum Iron clinically Indicates Screening for Iron Overload, And Plaintiffs serum Ferritin was 414 Ng/mL on Sept. 12, 2016, plaintiff was not Screened for Iron Overload until Dec., 2018. The Dec. 19, 2018 Lab Report Indicated Serum Iron 268 ug/dL; Serum Ferritin 483 Ng/ML; and Iron Percent Saturation 64%. Following the Screening the Plaintiff's Iron Overload Condition was not Clinically Diagnosed to Determine etiology of the Condition. ie, hemochromatosis.

3-E

15. Plaintiffs Chronic HCV was Monitored in Chronic Care By Defendants: Goodman in 2015-16; Ross in 2016-17; And Lee and Zevallos in 2018 each of whom Advised Plaintiff that he did not Qualify for Treatment due to Lowering Liver Enzyme Levels Reducing his APRI Score in Annual Chronic Care Labs, And That the Corizon Hep-C Committee Makes All Treatment Determinations. The Hep-C Committee, John Doe No. 3, And Defendants Transue, Goodman, Ross, Lee, Zevallos, Miner, And John Doe No. 4, Corizon Supervisors and Directors of Nursing Mechanically Applied BOP Treatment Guidelines, Excluding Plaintiff from HCV Treatment when BOP Guidance Clearly indicates " Proper Medical Practice Necessitates that All Cases are Evaluated on an Individual Basis and that Treatment Decisions Are Patient Specific".

16. During Chronic Care Encounters with Centurion Provider Donello on Aug. 26, 2019 and October 28, 2019, Donello Advised Plaintiff that his elevated iron Serum 173 ug/dL in June 2019, And 189 ug/dL in October 2019 were Normal Due to Plaintiffs HCV Infection, even after the HCV was Successfully erradicated By Treatment, and Refused Plaintiffs Requests for Screening for Iron Overload. Screening for iron Overload is Important Since the Combination of Diseases may Result in Accellerated Fibrosis Progression, or ongoing Fibrosis Progression even after HCV erradication. Hemochromatosis is Defined as an Excess Accumulation of iron in the Liver which over time Can Cause Tissue injury and Cirrhosis. Plaintiffs Grievance Regarding this issue was not Responded to By Centurion, John Doe No. 4

17. Corizon Director of Nursing Kimberly Switzer, in her Response to Plaintiffs

3-F

Informal Complaint (MI-C11-19-009), dated March 25, 2019 advised Plaintiff that Plaintiff's Lab testing for Anemia, including Ferritin would be closely Monitored Should it Become Elevated Again, however there has been No Continuity of Care, Plaintiff's Ferritin and iron Saturation levels have not been Routinely Monitored.

18. As a Result of Long Term Iron Overload, the Condition hastened Progression of Plaintiff's Chronic HCV to Stage II Cirrhosis; Resulted in a Diagnosis that Plaintiff was Pre Diabetic on Dec. 19, 2018; and, has caused Plaintiff to Suffer Symptoms of heart failure: Arrhythmias, Shortness of Breath while lying Down, Reduced ability to exercise, and fainting. Plaintiff's heartrate has Reduced to as low as 48 Beats per Minute on Vital Signs Recordings including at May 23, 2019 ECG Diagnostic Testing.

19. Plaintiff was Notified on Jan. 7, 2019 that he would be treated for his Chronic HCV, and he was treated from Jan. 9, 2019 through April 3, 2019 Successfully eradicating the infection.

20. Corizon Providers Did not Advise Plaintiff of his Diagnosis of Cirrhosis on Nov. 23, 2018, or that he had been Diagnosed with Stage II Cirrhosis. Each Provider who Plaintiff Spoke to Regarding his Condition Did not Advise Plaintiff of HCV Morbidity, Mortality, Co-Morbid Conditions, Standards of Care, or Risks of Progression of the Disease to Cirrhosis. Plaintiff Lacked knowledge of Such facts Sufficient to State a Cause of Action until he was Notified of the Diagnosis of Cirrhosis on March 26, 2019 By Nurse Thude.

21. Plaintiff is Now Diagnosed with Stage II Cirrhosis, Compensated, Resulting in Decreased Life Expectancy 9-12 years.

22. The Risks of Delaying Treatment of Plaintiff's HCV was obvious. BOP

3-G

Guidance Clearly Indicates that Patients with Advanced hepatic Fibrosis (Primarily Stage 3) have a 10% per year Rate of Progression to Cirrhosis (Stage 4), and that Patients with hepatic Cirrhosis have a 4% per year Rate of Developing Decompensated Cirrhosis, and a 3% per year Rate of Developing hepatocellular Carcinoma.

23. Plaintiff was Reffered for hepatic ultra Sound on Sept. 2016 by Defendant Ross. The Diagnostic Report indicates Plaintiffs Liver was Enlarged but did not identify any Findings Consistent with Cirrhosis.

24. Plaintiff was Reffered for esophagogastroduodenoscopy (EGD) by Dr. Miner on Jan. 6, 2019 following Fibrotest on Nov. 28, 2018, Result 0.91, Severe Activity and Fibrosis. The EGD Result was 3 Channels of esophageal Varices, but no Ascites, providing a Diagnosis of Stage II Cirrhosis on or about March, 2019.

25. Plaintiff was Reffered for Screening for hepatocellular Cancer (HCC) by Dr. Miner on April 27, 2019, to A2 Tech Radiology, Dr. Ahga Ayad / St. Lukes Medical Center. The Radiology Report Findings: Increased echogenicity; hyper-echoic Lesion in Left Lobe of Liver 1.6 x 1.3 x 1.7 cm; Main Portal Vein Demonstrates hepatopedal Flow; Spleen is at upper Limits of Normal Size.

26. As a Result of the delay, Denial, and Interference of Providing Treatment of Plaintiffs Chronic HCV, he is Now Diagnosed with Stage II Cirrhosis, and he has now Lost the Window of opportunity in which Medically Necessary and Meaningful Treatment Could have Been Provided to Prevent or Delay the effects of Cirrhosis.

27. As a Result of Being Diagnosed with Stage II Cirrhosis, Plaintiff Suffers Severe Mental and Emotional Trauma

28. Defendant John Doe's No. 4: who were Corizon, and Centurion Supervisors and Directors of Nursing Staff failed to Train and Supervise Health Care Staff who were involved in Evaluation and Management of Plaintiffs HCV, causing Injury to Plaintiff.

28. Defendants Ryan, Shinn, Pratt, Corizon, and Centurion had Actual or Constructive Knowledge of the facts that give Rise to this Complaint, and have Repeatedly failed to meet and Comply with the Performance Measures of Parsons v. Ryan. (See Doc,'s: 2898, 2900, 2904, 3089, 3235)

29. Plaintiff Suffers more than De Minimus Injury which Resulted Directly from the Actions of the Defendants that were Malicious and Designed for the Purpose of Causing harm and injury, with Conscious Disregard to a Substantial Risk of harm.

30. The Defendants Actions were a Direct and Proximate Result of the Customs and Practices of ADOC, Corizon, and Centurion.

31. These Customs and Practices include an Ongoing Pattern of Deliberate Indifference to Plaintiffs Right to Be free from Cruel and Unusual Punishment.

32. Defendants Exercised Indifference to Widespread Incompetence which is Reckless, grossly Negligent, and Rises to a Level greater than a failure to train and Supervise.

33. These Customs and Practices were a Direct and Proximate Cause of the Injuries Suffered By the Plaintiff.

34. Defendants Actions were so wilful, wanton, and Grossly Negligent, as to Show evil Motive and intent, Reckless and Callous Indifference to Plaintiffs Rights, and were so clearly Dangerous Defendants Must have Known the harm that would Result.

3-I

## COUNT II

1. State the constitutional or other federal civil right that was violated: __Medical Malpractice__

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: __ARS 12-561__

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   See Supporting Facts Pg's 3-A, et seq.

   Defendants failed to Exercise that Degree of Care, Skill, and Learning expected of a Reasonably Prudent Health Care Professional in the Proffession or Class to which he Belongs within the State Acting in the Same or Similar Circumstances and Such failure was the Proximate Cause of the injuries Suffered By the Plaintiff

   Plaintiff Served Notice of Claim upon Secretary of State of Arizona on the Date Aug. 2, 2019. The Claim was Denied Pursuant to A.R.S. 12-821.01

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   See facts 18, 22, 23, 25, 24, 21, 26, 27

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.

4

## COUNT III

1. State the constitutional or other federal civil right that was violated: __42 USC 12101__
   __Americans with Disabilities Act__

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   See Supporting Facts Pgs. 3-A, et seq.

   Denial of Medical Care Denied Plaintiff of Major Life Activity Liver Function, and Amounts to an Exclusion from Medical Services which is A program, Service, or Activity.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   See facts No. 18, 22-25, 21, 26, 27

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

5

## E. REQUEST FOR RELIEF

State the relief you are seeking:

Statutory Damages: 42 USC 1983; ARS 12-551, Compensatory Damages $15,000,000.00
Punitive Damages $15,000,000.00
Injunctive Relief Including Preliminary Injunction
Declaratory Judgment
Costs
Attorney Fees

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __Nov. 27, 2019__        _John Wheeler_
                    DATE              SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6